UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DONALD R. CARSEY,**

    **Plaintiff,**

**-V-**
                                                         **Case No. 2:04cv193**
                                                        **JUDGE SMITH**
                                                         **Magistrate Judge Kemp**

**CIGNA GROUP INSURANCE PLAN,**
**et al.,**

    **Defendants.**

## OPINION AND ORDER

Plaintiff brings this action under the Employment Retirement Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § § 1001 *et seq*. Plaintiff moves for leave to supplement the administrative record. Both sides move for entry of judgment on the administrative record. For the following reasons, the Court **DENIES** plaintiff's motion for leave to supplement the administrative record and entry of judgment on the administrative record, and **GRANTS** defendants' motion for entry of judgment on the administrative record.

## I.  BACKGROUND

Donald R. Carsey ("Plaintiff") was married to Kellie Carsey ("Ms. Carsey").  Ms. Carsey died on December 7, 2001 at her home.  Ms. Carsey died as a result of ingesting a combination of Carisoprodol (or "Soma") and Alpraxolam (or "Xanax") prescription pills.

Plaintiff filed a claim in May 2003 seeking payment of accidental death benefits in connection with his wife's death.  At the time of her death, Ms. Carsey was employed by Gap, Inc. ("Gap").  Ms. Carsey was a participant in the long-term disability plan offered by Gap.  The long-term disability benefits are paid through a policy and contract of insurance issued by Life Insurance Company of North America ("LINA" or "CIGNA"). [1]  The group accident policy number is OK 822847.  Plaintiff was a named beneficiary of Ms. Carsey's Accidental Death and Dismemberment ("AD&D") benefits.

Under this plan, an employee may become eligible for benefits at the time of her death if the employee meets the requirements set out in Gap's Group Accident Policy Plan ("Plan").  The Plan states:

> We agree to pay benefits for loss from bodily injuries:
> (a) caused by an accident which happens while an insured is covered by this policy; and
> (b) which, directly and from no other cause, result in a covered loss.
>
> We will not pay benefits if the loss was caused by:
> (a) sickness, disease, or bodily infirmity; or
> (b) any of the Exclusions listed in the policy.

In addition to having to meet this language to qualify for the benefits, an employee must not fall into one of the exclusions listed in the Plan.  The applicable exclusion states:

---

[1] LINA is the entity that provided the insurance and claims administration for Gap's AD&D Benefit. "CIGNA Group Insurance" and "CIGNA" are registered service marks of LINA.

> No benefits will be paid for loss resulting from: 1. intentionally self-inflicted injuries, or any attempt thereat, while sane or insane (in Missouri, while sane).

Plaintiff argues that Ms. Carsey ingested 110 pills of Soma and Xanax, but that her death was accidental. In contrast, defendant maintains that Ms. Carsey intentionally ingested between 110 and 150 pills of Soma and Xanax, inflicting injury upon herself, in this case death.[2] Since defendant asserts the death was self-inflicted, defendant is denying plaintiff's claim to the $250,000 AD&D benefit under the Plan.

Defendants assert it is basing its opinion on (1) the Certificate of Death; (2) the opinions expressed by the Pickaway County Coroner, Dr. Michael Geron; and (3) the toxicological findings in its first denial of plaintiff's claim. Defendant then asserts that after plaintiff's appeal it further relied on the opinions expressed by a hired independent doctor, Dr. Scott Hardy.

The Certificate of Death listed the "immediate cause of death" as "self inflicted overdose of prescribed medications." It went on to state the "approximate interval between onset and death" at "hours." The Certificate stated under the section, "describe how injury occurred," as "overdose of medications." The Certificate of Death was prepared by Dr. Geron.

Defendants also base the decision on the opinions expressed by Dr. Geron on the Certificate of Death, which Dr. Geron derived by reviewing the toxicology report prepared by Forensic Toxicologist Dr. Roy K. Smith. Dr. Geron summarizes his analysis under the section, "Circumstances Surrounding Death," as follows:

> 37 year old white female being treated by Dr. Richard Liss fro [sic] depression and chronic chest wall pain secondary to previous aneurysm repair in 1993. She took many medicines, among them were Alpraxolam 0.25mg 90 tablets, filled on 12/6/01 and Carisoprodol 350mg, 60 tablets, filled on 12/5/01. Husband slept on couch that

---

[2] The Court finds it immaterial whether or not Ms. Carsey ingested 110 pills or 150 pills, since both sides agree that Ms. Carsey's death was attributable to the ingestion of "too many" pills.

3

> night and victim on the other couch. Last known to be alive at midnight when spoke to husband. He felt she had taken too much medication. 2 empty prescription bottles of the above medications were found in her purse. I drew blood levels at scene, toxicology revealed very toxic levels of both Alpraxolam of .11mcg/ml (0.12 mcg/ml and above are lethal), she also had near lethal levels of meprobamate, the major metabolite of Carisoprodol at 97.9 mcg/ml (lethal levels above 100 mcg/ml). I believe the combination resulted in her death. I believe ahe [sic] intentionally took the 150 tablets noted above. This could not have been done accidently.

Defendants argue that Dr. Geron concluded Ms. Carsey died of a self-inflicted overdose of Xanax and Soma sometime after she went to sleep, around the time of the early morning of December 7, 2001. Defendants also argue that Dr. Geron concluded from the toxicology findings that although the levels of the two drugs were both below lethal level, the combination resulted in her death. Defendants then sent its denial letter to plaintiff detailing the outcome of the claim, giving him an opportunity to appeal the decision.

In contrast, plaintiff argues that the very same data from the toxicology report shows the death was an accident. On appeal, plaintiff did not provide further information, but rather argued only that the toxicology report proved that the death was an accident and that Dr. Geron's conclusion was mere speculation. Plaintiff moves to supplement the record with additional information, arguing the denial letter was insufficient under 29 U.S.C. § 1133 and regulation 29 C.F.R. § 2560.503-1(g).

If allowed, plaintiff argues that Ms. Carsey was addicted to pain killers, resulting in her having a very high tolerance for the prescription pills. Moreover, that Ms. Carsey accidently consumed the 110 pills over the course of two days, twenty pills of Soma on December 5 and ninety pills of Xanax through out the day on December 6, to relieve the chronic pain she suffered from ever since her aneurysm surgery. Plaintiff further argues that Ms. Carsey did not intentionally self-inflict her death because just two days prior to her death she purchased a Pontiac TransAm, the

previous day she bought a cell phone, and that the next day she and plaintiff were to go Christmas shopping for their children. Plaintiff believes that Ms. Carsey sold 40 of the Carisoprodol pills for $800 and that she was going to use that to buy the presents the couple had put on lay-away. [3] Plaintiff seeks to supplement a second letter from Ms. Carsey's treating physician, Dr. Charles Kistler. In the letter Dr. Kistler opines that Ms. Carsey could not have self-inflicted her death. Lastly, plaintiff seeks to supplement an opinion of their own hired toxicologist, Dr. Michael Kelley. Dr. Kelley analyzed Ms. Carsey's death and concludes that Ms. Carsey most likely ingested the medications in smaller quantities over a longer period.

Lastly, defendantS relY on the opinion of Dr. Hardy, who was hired by defendants to do an independent analysis of Ms. Carsey's situation. Dr. Hardy performed further analysis after plaintiff appealed defendant's initial denial. Dr. Hardy summarized his fourteen page report by opining:

> Overall, it would be very difficult if not impossible to imagine ingesting this quantity of medication on an accidental basis. Ingestion of 150 tablets in addition probably to other regular prescription medications would be very difficult for a responsible adult to do without awareness, and it is medically probable that this resulted in the unfortunate and untimely death of Ms. Carsey. As to the intent of the result of that ingestion, a competent adult certainly would expect a profound outcome to occur, up to an and including a fatal result.

In addition, Dr. Hardy opined that the combined effects of Alpraxolam and Meprobamate[4] are one of synergy and that the combined effects of these two drugs on the cardiorespiratory and central neurologic function are more than additive. Dr. Hardy also stated "[w]hen there are multiple drugs that have been ingested, frequently a fatal outcome may result when the levels of the individual agents are in the 'sub-lethal' range . . . ."

---

[3] Plaintiff argues that the $800 found in Ms. Carsey's sock was the result of her selling 40 pills of Carisoprodol the previous day.

[4] Metophomate is the major metabolite of Carisoprodol. As the body metabolizes Carisoprodol it produces Metophomate.

In defendants' second and final letter denying plaintiff's claim, defendant states its reason for denying the benefits to plaintiff as follows:

> Based upon the opinions of both Dr. Michael Geron and Dr. Scott Hardy, we have determined that Kellie Carsey's death was the result of her self intentionally ingesting large quantities of medication, and that this act was indicative of suicide. This policy is an accidental death policy, which specifically excludes benefit payment for loss resulting from intentionally self inflicted injuries or suicide. Thus, no benefits are payable under policy OK 822847.

In sum, defendants denied plaintiff's claim for AD&D benefits under the Plan because it concluded from (1) the Certificate of Death, (2) the toxicology report, (3) the opinions expressed by Dr. Geron, and (4) the opinions expressed by Dr. Hardy, that Ms. Carsey's death was due to her intentionally ingesting too much of her prescription pills Soma and Xanax. On the other hand, plaintiff argues that he did not get a full and fair review because the first denial letter from defendant was deficient as a matter of law. Plaintiff moves the Court to remand the case so that the administrative record may be supplemented and he may receive a full and fair review. Lastly, both sides contend that the facts contained in the record prove they are correct and are seeking judgment on the record.

## II.  STANDARD OF REVIEW

Both sides in this conflict move for entry of judgment rather than for summary judgment. See Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 619 (6th Cir. 1998)(concurring opinion by Gilman, J.)  In Wilkins, Circuit Judge Gilman opined, "the concept of summary judgment is inapposite to the adjudication of an ERISA action." Id.  Judge Gilman reiterated this position in Brooks v. General Motors Corp., 2002 WL 1009466, at *3-4 (6th Cir. No. 01-CV-71921-DT, Apr.

Case: 2:04-cv-00193-GCS-TPK Doc #: 23 Filed: 07/25/05 Page: 7 of 20 PAGEID #: 169

30, 2002). The Court agrees and will, therefore, dispense with the summary judgment standard in this case.

An ERISA administrator's denial of benefits under a plan is subject to *de novo* review unless the plan grants the administrator discretionary authority either to determine benefits or construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 103 (1989); Brooks, 2002 WL 1009466, at *4. If the plan grants the administrator such discretion, the denial of benefits is subject to the highly deferential arbitrary and capricious standard of review. Firestone, 489 U.S. at 115; Brooks, 2002 WL 1009466, at *4.

"[T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action." Williams v. Int'l Paper Co., 227 F.3d 706, 712 (6th Cir. 2000). A decision regarding eligibility for benefits is not arbitrary and capricious if it is "rational in light of the plan's provisions." Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988). Stated differently, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Davis v. Kentucky Fin. Cos. Ret. Plan, 887 F.2d 689, 693 (6th Cir. 1989)(internal quotations and citation omitted). The plan administrator's decision should be upheld "if it is the result of deliberate, principled reasoning process and if it is supported by substantial evidence." Baker v. United Mine Workers of Am. Health and Ret. Funds, 929 F.2d 1140, 1144 (6th Cir. 1991).

The Sixth Circuit has held that "merely because our review must be deferential does not mean our review must also be inconsequential. While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." Moon v. Unum Provident Corp., 405 F.3d 373, 379

(6th Cir. 2005). "Deferential review is not no review, and deference need not be abject." Id. (citing McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir. 2003)).

The Sixth Circuit has recognized that an actual conflict of interest exists when an insurer both decides whether an employee is eligible for benefits and pays those benefits. Darland v. Fortis Benefits Ins. Co., 317 F.3d 516, 527 (6th Cir. 2003). "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Firestone Tire & Rubber Co., 489 U.S. 101, 115 (1989)(quoting Restatement (Second) of Trusts § 187, cmt d (1959)). In the instant case, defendant decides whether a claimant is eligible for benefits, and pays those benefits. A conflict of interest therefore exists which must be considered as a factor when applying the abuse discretion standard. The Court will consider and weigh this factor throughout the following discussion.

### III. DISCUSSION

#### A. Supplementation of the Administrative Record

The Court will first address plaintiff's motion for leave to supplement the administrative record. The Court denies plaintiff's motion for leave to supplement the administrative record because (1) this case is distinguishable from Vanderklok v. Provident Life & Accident Ins. Co., 956 F.2d 610 (6th Cir. 1992) and Wolfe v. J.C. Penney Co., Inc., 710 F.2d 388 (7th Cir. 1983); (2) defendant fulfilled the requirements of 29 U.S.C. § 1133(1), (2) and 29 C.F.R. § 2560.503-1(g); and (3) a supplementation of the administrative record would be futile.

Plaintiff contends he was not granted a "full and fair" review by the plan administrator, and because of this he should be entitled to supplement the administrative record. Plaintiff asserts that

8

defendant failed to meet the requirements of § 2560.503-1(g) and because of this is entitled to a remand so that the plan administrator may consider the additional information. Plaintiff seeks to supplement the administrative record with affidavits of plaintiff and Susan McKinney, along with a revised letter from Ms. Carsey's treating physician, Dr. Kistler. In addition, plaintiff argues that he was not given an opportunity to respond to defendant's hired independent doctor, Dr. Hardy and would like to supplement the administrative record with an opinion by toxicologist Dr. Michael Kelley.

**1. Distinction of <u>Vanderklok</u> and <u>Wolfe</u>**

Plaintiff's chief argument is that the Sixth Circuit in <u>Vanderklok</u> remanded the plaintiff's case because the plan administrator's denial letter contained deficient language rendering it insufficient under § 2560.503-1(g). In <u>Vanderklok</u>, the court relied on the rationale of the Seventh Circuit's decision in <u>Wolfe</u>. Plaintiff asserts that the Sixth Circuit found that the language, "additional medical information" was insufficient to satisfy § 1133(1) when regulation § 2560.503-1(g)(iii) is applied. In relying on this holding, plaintiff contends that the language "any medical evidence" used by defendant is also insufficient to satisfy § 1133(1) and that a remand to the plan administrator is proper so that the administrative record may be supplemented.

The Sixth Circuit in <u>Vanderklok</u> held that the plan administrator's denial letter was insufficient to meet the requirements of § 1133, based on facts that are not present in this case. <u>Vanderklok</u>, 956 F.2d at 617. Section 1133 states:

> In accordance with regulations of the Secretary, every employee benefit plan shall –
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

9

>   (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.  The pertinent federal regulation, 29 C.F.R. 2560.503-1(g), promulgated by the Secretary of Labor to implement the statutory mandate provides:

>   (g) Manner and content of notification of benefit determination.
>       (1) The notification shall set forth, in a manner calculated to be understood by the claimant –
>           (i)    The specific reason or reasons for the adverse determination;
>           (ii)   Reference to the specific plan provision on which the determination is based;
>           (iii)  A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; [and]
>           (iv)   A description of the plan's review procedures and the time limits applicable to such procedures....

29 C.F.R. § 2560.503-1(g) (1999).  In Vanderklok, the Sixth Circuit held that the administrator's letter was defective because it failed "to provide the specific reason or reasons for denial and the specific reference to pertinent plan provisions on which the denial is based.  Further more although it states that Provident will review additional medical information, it does not contain explicit information as to the steps to be taken if the employee wishes to submit his claim for review, nor is there any indication of what additional proof might be required."  Vanderklok, 956 F.2d at 616.  The court found that the letter did not state a reason for denial, but only a conclusion.  Id.  Relying on the holding in Wolfe, the Sixth Circuit reasoned that "defendant's failure to provide specific reasons meant that plaintiff was not apprised of the deficiency in his claim which he could attempt to correct with additional evidence upon review."  Id.  The court went on to hold the denial letter lacked sufficient information to the plaintiff regarding the steps for obtaining review.  Id.  The Sixth Circuit found, as the Seventh Circuit did in Wolfe, "that such procedural errors are a significant error

10

on a question of law, which requires that the decision to deny benefits be overturned" and the case was remanded for a full and fair review of the plaintiff's claim. Id. at 616-617.

The Sixth and Seventh Circuit courts rely on the fact that the denial letters did not state specific reasons for the plan administrator's denial. Because the letters did not contain the specific reason for the denial, but only stated a conclusion, the plaintiffs were unable to know exactly what "additional medical information" to supply. However, these two rulings cannot be read to hold that if a denial letter uses the term "additional medical information" or similar language, that the denial letter is said to be procedurally insufficient in regards to regulation § 2560.503-1(g)(iii) and § 1133. The rulings demonstrate that a combination of (1) the lack of specifying a reason for denial and (2) not clearly stating the importance of the "additional medical information," will not pass the procedural requirements of an ERISA claim. In both Vanderklok and Wolfe, the courts relied on the fact that the denial letter failed to comply with regulation sections 2560.503-1(g)(i) *and* (g)(iii).

Unlike the cases in Vanderklok and Wolfe, here, defendant provided a four page denial letter to plaintiff detailing the facts and specifying a reason for denying plaintiff's claim. (Pl.'s Mot. Leave Supplement Admin. R., Ex. A)(Doc. 13-2, Ex. A). Defendants stated the reason for denial as, "based upon the evidence that we have gathered, Kelly R. Carsey died as a result of a self-inflicted injury. As this is specifically excluded under the policy, benefits would not be payable under this policy." (Doc. 13-2, Ex. A, p. 3). Defendants then provide four sentences that describe the kind of information that may be provided by plaintiff on appeal. This is fully discussed below. Therefore, this case is distinguishable from Vanderklok and Wolfe because defendant specified a reason for the denial and provided sufficient language to provide notice to plaintiff of what information would be pertinent to the appeal.

11

**2. 29 C.F.R. § 2560.503-1(g)**

The Court also denies plaintiff's motion to supplement the record because defendant's denial letter to plaintiff satisfies the four procedural requirements set out in regulation § 2560.503-1(g) *supra*. In this case the plan administrator clearly outlined the policy provision affecting the case on page one of the denial letter by blocking off a section in bold print with the language of the provision below it, satisfying requirement (g)(ii). (Doc. 13, Ex. A, p. 1)  The administrator also satisfied requirement (g)(iv) by spelling out the review process on page four of the denial letter, stating that "[t]he appeal must be in writing, submitted within 60 days of the date you receive this letter and must contain the following information: the reason for the appeal and/or disagreement, the insured's name and social security number, and any medical evidence that supports that Insured death was due to covered accident." Id at 4.  The administrator also details the review procedures and time limits for a second time on page four of the letter. Id.

As discussed above, the courts in Vanderklok and Wolfe remanded the cases because the denial letters did not satisfy §§ (g)(i) and (g)(iii).  Here, the plan administrator specifies the reason for the denial and included additional language detailing what plaintiff may submit for review.  To satisfy requirement (g)(i), the administrator writes, "based upon the evidence that we have gathered, Kelly R. Carsey died as a result of a self-inflicted injury.  As this is specifically excluded under the policy, benefits would not be payable under this policy." Id at 3.  The evidence the administrator relies on is written out in approximately two full pages of the letter. Id at 1-3.

Plaintiff's next main argument is that defendant did not satisfy requirement (iii) of the regulations, arguing he did not know what information to send to the plan administrator on his appeal. (Reply Mem. Pl., p. 4-6) (Doc. 21, p. 4-6).  The Court disagrees.  The administrator includes four sentences on page four of the denial letter stating what type of information is needed.  (Doc.

13-2, Ex. A, p. 4). They include: (1) "any medical evidence that supports that Insured death was due to covered accident;" (2) "[s]hould you have any information which would prove contrary to our findings, please submit it to the undersigned;" (3) "[w]e would be pleased to review any objective information you would wish to submit;" and (4) "[i]nclude any documentation (e.g. medical data) that you feel supports your claim." Id.

Plaintiff argues that "additional medical information" was held to be insufficient in Vanderklok and Wolfe. As mentioned earlier, the Court found the language, "additional medical information," sufficient to satisfy 29 U.S.C. § 1133(1) and the requirements found in regulation 29 C.F.R. § 2560.503-1(g).

In addition, the Court may rely on the holding in Kent, in which the Sixth Circuit held that even though the procedural requirements were technically deficient, the procedure used by the plan administrator substantially complied with ERISA's procedural requirements. Kent v. United of Omaha Life Ins. Co., 96 F.3d 803, 807 (6th Cir. 1996). In Kent, the Sixth Circuit held that although a first denial letter did not meet the procedural requirements and the second letter was untimely that "[n]evertheless, the procedures, when viewed in light of the myriad of communications between claimant, her counsel, and the insurer, were sufficient to meet the purposes of Section 1133 in insuring that the claimant understood the reasons for the denial of the claim as well as her rights to review of the decision." Id.

Other Circuits have held that when the communications when looked as a whole, sufficiently fulfill the requirement of § 1133, that the claim decision will be upheld. Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 127 (4th Cir. 1994); Donato v. Metropolitan Life Ins. Co., 19 F.3d 375, 382 (7th Cir. 1994); Davidson v. Prudential Ins. Co. of America, 953 F.2d 1093, 1096 (8th Cir. 1992).

13

### 3. Futility of Additional Information

Even if the Court were to look at the additional information plaintiff wishes to supplement to the record, the Court would not be persuaded that the plan administrator's decision would change. The additional evidence plaintiff seeks to introduce only further implies that Ms. Carsey intentionally ingested the pills. The evidence would prove that in the past Ms. Carsey had felt the ill effects of ingesting too many prescription pills. This would only hurt plaintiff's case by showing that Ms. Carsey knew what could happen when she was ingesting the pills. Because plaintiff's additional information would prove futile, the Court denies plaintiff's motion for leave to supplement the administrative record.

The plan administrator had received all the information that was to be reviewed in this claim. Plaintiff was given an opportunity to provide defendant with additional information on appeal and this was not done. Additional information may not be submitted now. Plaintiff received a full and fair review under § 1133 as interpreted by regulation § 2560.503-1(g). The Court therefore declines to remand the case to the plan administrator.

The Court will shift its focus to determining the standard of reviewing the plan administrator's decision based on the information the plan administrator had before him.

### B. Standard of Review for the Plan Administrator's Denial

An ERISA administrator's denial of benefits under a plan is subject to *de novo* review unless the plan grants the administrator discretionary authority either to determine benefits or construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 103 (1989); Brooks, 2002 WL 1009466, at *4. If the plan grants the administrator such discretion, the denial of benefits is

subject to the highly deferential arbitrary and capricious standard of review. Firestone, 489 U.S. at 115; Brooks, 2002 WL 1009466, at *4.

The Sixth Circuit has interpreted Bruch as requiring the plan's grant of discretionary authority be "express." Perry v. Simplicity Eng'g, 900 F.2d 963, 965 (6th Cir. 1990). For the plan administrator to be granted discretion it is not necessary for the plan language to contain the term "discretionary" or some other terminology. See Johnson v. Eaton Corp., 970 F.2d 1569, 1572 n.2 (6th Cir. 1992). All that is needed is that a plan contain "a clear grant of discretion [to the administrator] to determine benefits or interpret the plan." Wulf v. Quantum Chem. Corp., 26 F.3d 1368, 1373 (6th Cir. 1994).

Plaintiff contends that the plan administrator's decision should be reviewed *de novo*, stating "there is no language in the insurance policy which vests 'discretion' to the administrator." (Pl.'s Mot. J. Admin. R.) (Doc. 14, p. 5). In contrast, defendant argues the decision is subject to the arbitrary and capricious standard. Defendant cites to the language in Gap's Summary Plan of the Policy: "[a]ll payments will be made to you or your beneficiary as soon as the claims administrator (CIGNA) receives satisfactory proof of loss." (LIN 0293). However, the Court will disregard this language and focus on the controlling language in the policy itself: "[b]enefits for loss covered by this policy will be paid as we receive *proper written proof* of such loss." (emphasis added) (LIN 0016).

Defendants argue that the language in the Summary Plan of the Policy was applicable and in line with the Sixth Circuit in Perez. However, the Court finds the language in the policy itself, not the Summary Plan, in line with the Sixth Circuit. The language in the policy grants the plan administrator discretion. In Perez, the court held the language, "shall have the right to require as part of the proof of claim satisfactory evidence," vested the plan administrator with a clear grant of

discretion. Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998). The Perez court held that "[a] determination that evidence is satisfactory is subjective judgment that requires a plan administrator to exercise his discretion." Id. at 558; compare Chiera v. John Hancock Mut. Life Ins. Co., 3 Fed.Appx. 384, 2001 WL 111585 (6th Cir.(Ohio))(holding that since the plan language did not require a subjective judgment in the plan administrator, the plan administrator lacked discretion).

As stated above, in this case the plan language states, "[b]enefits for loss covered by this policy will be paid as we receive *proper written proof* of such loss" (emphasis added). (LIN 0016). The term "proper" before "written proof" is the functional equivalent to the word "satisfactory," found in Perez; in that both terms require subjective judgment on the part of the plan administrator. The Sixth Circuit in Hoover, held that the term "written proof" without more does not contain a "clear grant of discretion [to Provident] to determine benefits or interpret the plan." Hoover v. Provident Life and Accident Ins. Co., 290 F.3d 801, 808 (6th Cir. 2002). That is not the case here. Here, "proper" grants discretion in the plan administrator. The plan administrator shall not accept any written proof, only "proper" written proof.

Plaintiff also argues that the Court may consider evidence outside of the administrative record. (Pl.'s Mot. Leave Supplement Admin. R., p. 8) (Doc. 13-1, p. 8). Plaintiff relies on a Sixth Circuit case where the court held that when a district court is conducting a *de novo* review, "[t]he district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 619 (6th Cir. 1998)(Gilman, J. concurring). Plaintiff argues they are challenging the procedural process of the plan administrator. As detailed above, the Court has held the plan administrator complied with § 1133's procedural requirements, and therefore will

16

not look outside of the administrative record. In addition, the Court has determined that the plan administrator's decision is subject to an arbitrary and capricious standard and not *de novo* review. Therefore, the Court will not look outside the administrative record.

For the above reasons, the Court finds that the language, "proper written proof," grants discretion in the plan administrator. As a result, the Court will review the plan administrator's decision subject to an arbitrary and capricious standard.

### C. Plan Administrator's Decision

Defendants summarized the basis for denying AD&D benefits to plaintiff in the second and final denial letter:

> Based upon the opinions of both Dr. Michael Geron and Dr. Scott Hardy, we have determined that Kellie Carsey's death was the result of her self intentionally ingesting large quantities of medication, and that this act was indicative of suicide. This policy is an accidental death policy, which specifically excludes benefit payment for loss resulting from intentionally self inflicted injuries or suicide. Thus, no benefits are payable under policy OK 822847.

(LIN 0054). Dr. Geron, the Pickaway County Coroner, prepared the Certificate of Death and examined the toxicology report. Dr. Geron summarized his findings on the Certificate of Death:

> 37 year old white female being treated by Dr. Richard Liss fro [sic] depression and chronic chest wall pain secondary to previous aneurysm repair in 1993. She took many medicines, among them were Alpraxolam 0.25mg 90 tablets, filled on 12/6/01 and Carisoprodol 350mg, 60 tablets, filled on 12/5/01. Husband slept on couch that night and victim on the other couch. Last known to be alive at midnight when spoke to husband. He felt she had taken too much medication. 2 empty prescription bottles of the above medications were found in her purse. I drew blood levels at scene, toxicology revealed very toxic levels of both Alpraxolam of .11mcg/ml (0.12 mcg/ml and above are lethal), she also had near lethal levels of meprobamate, the major metabolite of Carisoprodol at 97.9 mcg/ml (lethal levels above 100 mcg/ml). I believe the combination resulted in her death. I believe ahe [sic] intentionally took the 150 tablets noted above. This could not have been done accidently.

17

(LIN 0301). In relying on the Certificate of Death, the toxicology report prepared by Forensic Toxicologist Dr. Smith, and Dr. Geron's opinion, defendants initially denied plaintiff's claim stating that Ms. Carsey died of a self-inflicted injury and that it was excluded under the Plan. Defendants then allowed plaintiff to add any additional information that plaintiff felt would be imperative in reversing defendants' position. After plaintiff sent its appeal letter to defendants stating that the toxicology findings supported a conclusion that the death was by accident, defendant then hired an independent doctor to analyze Ms. Carsey's situation. In a fourteen page report, Dr. Hardy summarized his findings as follows:

> Overall, it would be very difficult if not impossible to imagine ingesting this quantity of medication on an accidental basis. Ingestion of 150 tablets in addition probably to other regular prescription medications would be very difficult for a responsible adult to do without awareness, and it is medically probable that this resulted in the unfortunate and untimely death of Ms. Carsey. As to the intent of the result of that ingestion, a competent adult certainly would expect a profound outcome to occur, up to an and including a fatal result.

(LIN 0069).

Although the toxicology report showed that the levels of Soma and Xanax in Ms. Carsey's blood were below the lethal limit, two doctors independently found that the result of Ms. Carsey's death was self-inflicted ingestion of the two pills in excess of the prescribed daily amount. Both doctors concluded that the combination of the two drugs resulted in Ms. Carsey's death. In addition, both doctors opined that Ms. Carsey intended for this to happen or that she certainly knew death could occur.

Plaintiff argues that Dr. Hardy was hired by defendants and that his conclusion is pure speculation and unreasonable. Dr. Hardy based his opinion on the information given to him by defendants. This was the same information available to the plan administrator. Dr. Hardy expressed his conclusion in a fourteen-page letter to the plan administrator. Plaintiff also argues that Dr.

Geron's conclusion is unreasonable. Dr. Geron was not hired by either party, thus having no ties to either party. He also came to the same conclusion as Dr. Hardy.

The Court finds that defendant did have a rational basis for concluding that Ms. Carsey's death was due to a self-inflicting act. Defendants relied on the opinions of Dr. Geron and Dr. Hardy, who both based their opinions on the toxicology report and on the Certificate of Death. Defendants came to a rational conclusion supported by substantial evidence resulting from a deliberate, principled reasoning process. Therefore, defendants were not acting arbitrarily and capriciously when it determined that plaintiff did not qualify for the AD&D benefit under the Plan.

In sum, even taking into account defendants' conflict of interest, the Court holds that defendant's decision to deny plaintiff's AD&D benefits was not arbitrary and capricious. Defendants are therefore entitled to judgment in its favor.

## IV. DISPOSITION

For all the foregoing reasons, the Court **GRANTS** defendants' motion for judgment as a matter of law (Doc. 19) and **DENIES** plaintiff's motion for judgment on the administrative record (Doc. 14). The Court also **DENIES** plaintiff's motion for leave to supplement the administrative record (Doc. 13). Defendants' motion for extension of time (Doc. 16) is moot.

The Clerk shall enter final judgment in defendants' favor, and against plaintiff, dismissing this action with prejudice.

The Clerk shall remove Doc. 13, Doc. 14, Doc. 16 and Doc. 19 from the Court's pending CJRA motions list.

The Clerk shall remove this case from the Court's pending cases list.

19

**IT IS SO ORDERED**

/s/ George C. Smith

**GEORGE C. SMITH, JUDGE**
**United States District Court**